IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TERRY HAMRICK, | ) |
| Plaintiff, | ) |
| v. | ) No. 21-cv-3061 |
| KM PLANT SERVICES, INC., | ) |
| Defendant. | ) |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff Terry Hamrick is a former employee of Defendant KM Plant Services, Inc. In early 2019, Mr. Hamrick took medical leave to undergo rotator-cuff surgery. He returned to work in August 2019 as a "probationary employee," a designation that indicated he had left his employment and thereby forfeited his seniority rights. That November, Mr. Hamrick lost his job entirely. He later brought this action under the Family and Medical Leave Act of 1993, alleging that KM's handling of his medical leave and his eventual termination constituted unlawful interference.

This matter comes before the Court on the parties' cross-motions for summary judgment.  See Def.'s Mot. Summ. J., d/e 15; Pl.'s Mot. Partial Summ. J., d/e 17.  Because several questions of material fact remain in dispute, both motions are DENIED.

## I.  BACKGROUND

### A.  Facts

The Court draws the following facts from the parties' statements of undisputed facts and the evidence submitted.  The Court deems admitted those facts not in dispute and any facts disputed without an evidentiary basis.  See L.R. 7.1(D)(2)(b)(2).

Defendant KM Plant Services ("KM") provides industrial-cleaning services to steel mills, power plants, and refineries.  Plaintiff Terry Hamrick is a former KM employee.  At all relevant times, Mr. Hamrick was a journeyman industrial cleaning field technician and a member of the International Union of Painters & Allied Trades, AFL-CIO ("IUPAT").

Mr. Hamrick began working for KM in 2009. Mr. Hamrick's employment was governed a "Specialized Plant Services Agreement," between KM and IUPAT and an addendum hereto.  In relevant part, the addendum provided that:

> Any employee leaving employment for the company due to layoff, termination, or resignation and out of employment for a period of sixty (60) days or longer will be classified as a probationary employee upon his or her return. In addition, for the purpose of calculating vacation pay he or she will be starting their annual computation of cumulative hours with the first hour of work following such return.

Pl.'s Mem. ex. 2, d/e 18-2, at 7. The addendum further provided that probationary employees would not "be placed on jobs until such time each regular employee has been afforded the opportunity to work." Id.

In January 2019, Mr. Hamrick informed his supervisor of a planned rotator-cuff surgery and "need to take time off from work." Hamrick Decl., Pl.'s Mem. ex. 6, d/e 18-6, at 1. Mr. Hamrick soon conveyed the same information to KM's human-resources director, Dan Carey. Mr. Carey advised Mr. Hamrick that—assuming Mr. Hamrick's condition qualified him for medical leave—his point of contact would be Unum, a company that served as KM's third-party benefits administrator.

Mr. Hamrick received an FMLA leave letter from Unum on February 6, 2019. Pl.'s Mem. ex. 3, d/e 18-3, at 22. According to

the letter, Unum had received notice on February 5, 2019, of Mr. Hamrick's need to begin his medical leave on March 5.  The letter stated that, as of the date of his request, Mr. Hamrick was "eligible for FMLA."  Id.  The letter further requested that Mr. Hamrick authorize Unum to contact his treating physicians.

Mr. Hamrick provided Unum with a signed authorization form on February 11.  Pl.'s Mem. ex. 4, d/e 18-4, at 1.  Two days later, Mr. Hamrick's physician wrote Unum to certify that Mr. Hamrick had a qualifying serious health condition—specifically, a rotator-cuff tear—and that Mr. Hamrick could not use his "[right] arm until released by surgeon."  Id. at 4.  Dr. Mark Greatting estimated that Mr. Hamrick's "dates of inability" would run from March 5, 2019, through June 5, 2019, "or until released."  Id.  Dr. Greatting also certified that Mr. Hamrick would require three sessions of physical therapy weekly "for 8–10 weeks post[-operation]."  Id.

On March 6, Mr. Hamrick received a leave-certification letter from Unum.  Id. at 10.  The letter advised that Mr. Hamrick was approved for "continuous" leave from March 5 to May 29.  Id.  The letter also included a document entitled "Important Information about K2 Industrial Services's [sic] Family and Medical Leave

Policy." Pl.'s Mem. ex. 5, d/e 18-5, at 1.  This document advised Mr. Hamrick: "If you need an extension of your leave, you should notify Unum.  You will be required to provide additional certification of the serious health condition."  Id.

Three weeks after Mr. Hamrick's leave began, Mr. Carey added two documents to Mr. Hamrick's personnel file.  The first, entitled "Separation Record," recorded Mr. Hamrick's "date of separation" from KM as March 4, 2019, the day before Mr. Hamrick's leave began.  Pl.'s Mem. ex. 5, d/e 18-3, at 1.  The second, an "End of Employment Form," similarly lists that day as the last of Mr. Hamrick's employment.  Id. ex. 4, d/e 18-2, at 18.

Mr. Hamrick exhausted his FMLA leave on May 29, 2019.  Around that time, Mr. Hamrick advised both Unum and Mr. Carey that Dr. Greatting had not yet cleared him to resume his duties.  Mr. Hamrick then sought and was approved for another period of short-term disability leave, which was to run through August 11.  "At no point in time did anyone notify [Mr. Hamrick] that" taking additional leave "was problematic."  Def.'s Resp., d/e 21, at 13.

Mr. Hamrick was released to return to work on August 12, 2019.  When Mr. Hamrick arrived at KM, Mr. Carey presented him

with a "Return-to-Work Probation Agreement."  Def.'s Mem. ex. 2,

d/e 16-2, at 131.  This document specified seven "restrictions that

Terry Hamrick hereby agrees to adhere to" before resuming work:

> 1. Emp was last on the job on 3/4/2019 when he left employment to take care of personal issues.
> 2. Employee came into dispatch today 8/8/2019 and is seeking reinstatement to the job and has agreed to end the pattern.
> 3. Employee was cautioned about coming ready to work with ids, ppe and clean shaven.
> 4. The employee agrees to spearhead the safety effort to make certain that he and the jobs are in compliance with the safety program especially wearing proper ppe.
> 5. Employee will communicate any attendance or work issues with dispatch and the supervisor.
> 6. The time off work counts as an unpaid disciplinary suspension.
> 7. Employee agrees that he will not disclose the details of this agreement or the nature of the investigation to anyone.

Id.  Mr. Hamrick, however, "refused to sign" this document and

instead "contacted his Union Rep."  Id.  In the meantime, Mr.

Hamrick, now classified as a "probationary employee," resumed the

same duties, worked the same hours, and adhered to the same

schedule as he had before taking leave.  This arrangement lasted

for a little less than three months.

Page **6** of **18**

On November 6, 2019, Mr. Hamrick was laid off in favor of another employee with superior "bumping rights." On November 19, Mr. Hamrick grieved his layoff pursuant to the Specialized Plant Services Agreement's dispute resolution procedures. See Pl's Mem. ex. 1, d/e 16-1, at 115-16. He alleged that, since his time on medical and short-term disability leave was not the result of a "layoff, termination, or resignation," KM had violated the controlling collective-bargaining agreements by designating him as a probationary employee. Id. At 116. A little less than a month later, the IUPAT advised Mr. Hamrick of its determination "that there [had] been no violation of the agreement" and that the grievance consequently would be withdrawn. Id. at 117.

**B.  Procedural History**

Mr. Hamrick later brought this action under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601 et seq., alleging that KM unlawfully interfered with his rights under the FMLA.  See Compl. ¶ 23, d/e 1; see also Pl.'s Mem., d/e 18, at 14 ("Hamrick's claim is an interference claim.").  He seeks a mandatory injunction compelling his reinstatement, lost wages, liquidated damages, and attorney's fees.  Id. at 13.

## II. JURISDICTION AND VENUE

Mr. Hamrick brought this action under the FMLA. This Court, therefore, has federal-question jurisdiction over his claims. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Venue is proper because "a substantial part of the events or omissions giving rise" to Mr. Hamrick's claims occurred in this District. 28 U.S.C. § 1391(b).

## III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable trier of fact could find for the nonmoving party. Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).

At summary judgment, the Court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008). Similarly, in ruling on cross-motions for summary judgment, the Court views "all facts and inferences in the light most favorable to the nonmoving party on each motion." Lalowski v. City of Des Plaines, 789 F.3d 784, 787 (7th Cir. 2015).

## IV. DISCUSSION

At issue is one claim brought under the FMLA, which Congress enacted "to balance the demands of the workplace with the needs of families while guaranteeing workers reasonable access to medical leave in a manner that accommodates the legitimate interests of employers." Ziccarelli v. Dart, 35 F.4th 1079, 1083 (7th Cir. 2022), cert. denied, 143 S. Ct. 309 (2022) (citing 29 U.S.C. §§ 2601(b)(1)–(3)) (cleaned up). The FMLA entitles eligible employees to "12 weeks unpaid leave per year for various reasons, including a 'serious health condition' rendering the employee unable to perform his or her job." Kauffman v. Fed. Exp. Corp., 426 F.3d 880, 884 (7th Cir. 2005) (citations omitted). "An eligible

employee is entitled to restoration to the same or equivalent job and benefits when the leave ends, and to continuation of health insurance during leave." Ziccarelli, 35 F.4th at 1083–84 (citing 29 U.S.C. § 2601(a)(1); id. § 2601(c)(1)).

The FMLA protects these rights by making it unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). To prevail, Mr. Hamrick must show (1) that he was eligible for the FMLA's protections; (2) that KM was an employer covered by the Act; (3) that he was entitled to FMLA leave; (4) that he provided KM sufficient notice of his intent to take FMLA leave; and (5) that KM nevertheless interfered with, restrained, or denied him FMLA benefits to which he was entitled. Ziccarelli, 35 F.4th at 1089 (citations omitted). To recover damages, Mr. Hamrick "must also show [that] he was prejudiced" by KM's allegedly unlawful actions. Id. (citing 29 U.S.C. § 2617(a)).

Neither party disputes that Mr. Hamrick's claim satisfies the first four statutory elements. See Def.'s Reply, d/e 23, at 3 (agreeing that Mr. Hamrick was "an 'eligible employee,'" was "entitled to FMLA leave," and "complied with all of his obligations

under the FMLA"). However, the record could support several diametrically opposed findings. Construing the record in the light most favorable to KM, a jury could conclude that Mr. Hamrick lost the FMLA's protections after exceeding its statutory maximum of twelve weeks' leave. By contrast, construing the record in the light most favorable to Mr. Hamrick, a jury could find that KM violated the FMLA by misclassifying or outright firing Mr. Hamrick as a result of his FMLA leave. This leaves the Court "with two competing accounts, either of which a jury could believe." Goelzer v. Sheboygan Cty., Wis., 604 F.3d 987, 995 (7th Cir. 2010). Both parties' motions for summary judgment must be denied.

**A. KM's Motion for Summary Judgment is Denied.**

KM argues that there is no causal link between Mr. Hamrick's exercise of his FMLA rights and his subsequent termination. KM says that Mr. Hamrick "remained an employee of KM during the entire period of his FMLA and short[-]term disability absences." Def.'s Mem., d/e 16, at 5. And KM argues that Mr. Hamrick's relegation to "probationary" status and his eventual termination were "triggered not by his exercise of his FMLA rights, but by his union's collective bargaining agreement with KM." Id. Yet the

record is unclear on all these points. Summary judgment in KM's favor is, therefore, inappropriate.

One such question is whether Mr. Hamrick was terminated or suspended before or during his leave. An employer can be liable for interference if it "use[s] FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); see Juday v. FCA US LLC, 57 F.4th 591, 595 (noting that post-leave adverse treatment can create liability for interference); Pagel v. TIN Inc., 695 F.3d 622, 629 (7th Cir. 2012) (same). "Employers violate the FMLA not only when they take adverse action in response to specific requests for leave but also when they discharge an employee in anticipation of the future use of leave." Zutz v. Froedtert Health, No. 20-cv-388, 2022 WL 1488204, at *6 (E.D. Wis. May 11, 2022).

The record leaves this question unresolved. The parties agree that Mr. Hamrick began his leave on March 5, 2019, and that he was cleared to return to work on August 12, 2019. See Def.'s Reply, d/e 23, at 3. They also agree that neither Unum nor KM ever "advised Hamrick that there was a problem with his leave" or "told him that he had been disciplined or that his employment had

been terminated." Id.  But KM's internal documentation contradicts this narrative.  According to the Separation Record, Mr. Hamrick's "date of separation" from KM was March 4, 2019, the day before Mr. Hamrick took leave.  Pl.'s Mem. ex. 5, d/e 18-3, at 1.  The End of Employment Form also marks March 4, 2019, as the last day of Mr. Hamrick's employment.  Id. ex. 4, d/e 18-2, at 18.  Drawing all inferences in Mr. Hamrick's favor, a reasonable jury could find that KM terminated Mr. Hamrick the day before he took leave.  In other words, "a reasonable jury could find that the FMLA leave granted to" Mr. Hamrick "was illusory." Lewis v. Sch. Dist. #70, 523 F.3d 730, 743 (7th Cir. 2008).

Still, KM maintains that Mr. Hamrick remained employed throughout his leave.  KM argues that the Separation Record was "merely an internal document recording Plaintiff's absence from work while on Short Term Disability leave."  Def.'s Mem., d/e 16, at 11.  Similarly, according to KM, Mr. Hamrick's "End of Employment Form" was just "another internal record of Plaintiff's status as an employee on leave," not evidence of the end of Mr. Hamrick's employment.  Id.  But accepting these explanations would require the Court to construe the record in KM's favor and

to disregard the plain meaning of those documents' titles. "End of Employment" and "Separation Record" cannot easily be read as connoting a period of temporary, authorized, and statutorily protected leave. Cf. Xin Liu v. Amway Corp., 347 F.3d 1125, 1135 (9th Cir. 2003) ("Under DOL regulations, the mischaracterization of [employee's] FMLA leave as personal leave qualifies as 'interference' with her leave.").

Another dispute of material fact lies in KM's classification of Mr. Hamrick as a "probationary employee," which stripped him of his seniority rights and precipitated his termination. The Specialized Plant Services Agreement defined a probationary employee as one who returned to KM after "leaving employment for the company due to layoff, termination, or resignation and out of employment for a period of sixty (60) days of longer." Pl's Mem. ex. 1, d/e 18-2, at 7. As the parties agree, Mr. Hamrick never resigned his position. The parties also agree-despite documentary evidence to the contrary-that Mr. Hamrick was not laid off or terminated until November 2019, more than three months after he returned to work. Given the apparent mismatch between Mr. Hamrick's circumstances and the Agreement's definition of a probationary

employee, a reasonable jury could find that KM interfered with Mr. Hamrick's FMLA rights by misconstruing the nature of his absence from work. Cf. Xin Liu, 347 F.3d at 1135; see generally 29 C.F.R. 825.700 ("[A] provision of a CBA which provides for reinstatement to a position that is not equivalent because of seniority (e.g., provides lesser pay) is superseded by FMLA.").

In sum, a reasonable jury could find KM liable for (1) terminating Mr. Hamrick before he took leave or (2) misclassifying him as a probationary employee. KM's motion is denied.

**B. Mr. Hamrick's Motion for Partial Summary Judgment is Also Denied.**

Mr. Hamrick identifies two independent bases for FMLA liability. First, Mr. Hamrick argues that his "employment was inadvertently terminated by KM in March of 2019 when he went on his FMLA leave," meaning that the "only reason that [he] lost his seniority is because the termination paperwork went into effect in March during his FMLA leave." Pl.'s Mem., d/e 18, at 3. The second is KM and Unum's collective failure to respond to Mr. Hamrick's request "for additional leave time," which he contends "had a detrimental effect" on his employment. Id. In response, KM

argues that Mr. Hamrick "was outside the protection of the statute" by the time he returned to work and so "cannot prove that his designation as probationary had any connection to the exercise of his statutory rights." Def.'s Resp., d/e 21, at 22.  KM further responds that Mr. Hamrick "was provided every bit of leave he requested," including his "12-week FMLA benefit" and "approximately 10 more weeks of non-FMLA leave." Id. at 24.

An employee "has no right to reinstatement—and, therefore, damages—if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job." Franzen v. Ellis Corp., 543 F.3d 420, 426 (7th Cir. 2008). Put differently, if Mr. Hamrick "was either unwilling or unable to return to work at the expiration of his FMLA leave,` [KM] lawfully could have terminated his employment, and he would not be entitled to damages resulting from this termination." Id.; see also Breneisen v. Motorola, Inc., 656 F.3d 701, 705 (7th Cir. 2011) ("When serious medical issues render an employee unable to work for longer than the twelve-week period contemplated under the statute, the FMLA no longer applies.").

Construing the evidence in KM's favor, a reasonable jury could find that Mr. Hamrick received all the FMLA benefits to which he was entitled. The undisputed record shows that Mr. Hamrick "took continuous FMLA leave from March 5, 2019, through May 29, 2019." Pl.'s Resp., d/e 20, at 6. The same record shows that Mr. Hamrick's FMLA leave was exhausted on May 29, 2019. Id. at 8. And the same record shows that Mr. Hamrick did not return to work until August 12, 2019. Id. at 7. Because a reasonable jury could conclude that Mr. Hamrick was "unable to return to work at the expiration of his FMLA leave," that jury also could find that KM "lawfully could have terminated his employment." Franzen, 543 F.3d at 426. In other words, a reasonable jury could accept the simplest formulation of KM's argument—that once Mr. Hamrick exhausted his leave, KM was within its rights to lay him off at any time. Accordingly, Mr. Hamrick's motion for partial summary judgment is denied.

## V. CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment (d/e 15) and Plaintiff's Motion for Partial Summary Judgment (d/e 17) are DENIED.

**IT IS FURTHER ORDERED THAT:**

1. A final pretrial conference is hereby SET for February 15, 2024, at 1:30 p.m. in Courtroom II in Springfield before U.S. District Judge Sue E. Myerscough. Jury trial is hereby SET for February 26, 2024, at 9:00 a.m. in Courtroom II in Springfield before Judge Myerscough. The parties are advised to review the Court's Standing Order on Final Pretrial Conferences, Exhibits, and Jury Instructions well before these settings.

**IT IS SO ORDERED.**

**ENTERED: December 18, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**